**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MANUEL RIVERA,

        Plaintiff,

v.

THE BOARD OF TRUSTEES of the
UNIVERSITY OF CHICAGO; MICHAEL
HAYES, individually and in his capacity as
Interim Dean of Students at the UNIVERSITY
OF CHICAGO; and JOHN DOES 1 through
4,

        Defendants.

Case No. 1:25-cv-03505

Hon. Judge Jeffrey I. Cummings

**DEFENDANTS BOARD OF TRUSTEES OF THE UNIVERSITY OF CHICAGO AND
MICHAEL HAYES' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.      PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR
HOUSING ACT FOR UNLAWFUL DISCRIMINATION. ...................................... 3

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR
HOUSING ACT FOR RETALIATION. .................................................................... 6

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL
EVICTION IN TORT. ............................................................................................... 7

IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1981. ................... 9

V.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ILLINOIS
CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES
ACT. ........................................................................................................................ 10

VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
CONTRACT. ........................................................................................................... 12

VII.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CHICAGO
LANDLORD AND TENANT ORDINANCE. ......................................................... 12

VIII.  PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VI. ............................. 13

IX.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH
PREJUDICE. ........................................................................................................... 15

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

CASES

*Access Living of Metropolitan Chicago v. Prewitt*, 111 F. Supp. 3d 890 (N.D. Ill. 2015) ............................................................................................................................5

*AIT Worldwide Logistics, Inc. v. Pacific Coast Container, Inc.*, 2024 WL 4041323 (N.D. Ill. Sept. 4, 2024) ........................................................................................11

*Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011) ...........................................2, 12

*Anthony v. O'Fallon Township High School District 203 Board of Education*, 712 F. Supp. 3d 1109 (S.D. Ill. 2024) ...................................................................14, 15

*Applegate v. Inland Real Estate Corp.*, 109 Ill. App. 3d 986 (2d Dist. 1982)................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................1, 3, 13, 14

*Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978 .........................................8

*Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146 (2d Dist. 1998) ..............................................................................11

*Carter v. Mueller*, 120 Ill. App. 3d 314 (1st Dist. 1983) .............................................11

*Cherry v. Five Bros. Mortgage Co. Services & Securing, Inc.*, 2019 WL 4014066 (N.D. Ill. Aug. 25, 2019)........................................................................................8

*Davis v. Fenton*, 857 F.3d 961 (7th Cir. 2017) ............................................................7

*Davis v. Fenton*, 2016 WL 1529899 (N.D. Ill. Apr. 13, 2016), *aff'd*, 857 F.3d 961 (7th Cir. 2017)........................................................................................................7

*Doe v. Village of Arlington Heights*, 782 F.3d 911 (7th Cir. 2015).............................15

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) .............................................9

*Dudley v. Fenton*, 2016 WL 4158932 (N.D. Ill. Aug. 5, 2016)....................................7

*Duncavage v. Allen*, 147 Ill. App. 3d 88 (1st Dist. 1986)............................................11

*Erickson v. Pardus*, 551 U.S. 89 (2007) ......................................................................4

*Falk v. Perez*, 973 F. Supp. 2d 850 (N.D. Ill. 2013)...................................................10

*Farhan v. 2715 NMA LLC*, 723 F. Supp. 3d 662 (N.D. Ill. 2024), *appeal docketed*, No. 24-1532 (7th Cir. Apr. 4, 2024) ................................................................4, 5

*G&G Closed Circuit Events, LLC v. Castillo*, 327 F. Supp. 3d 1119 (N.D. Ill. 2018) ...........................................................................................................10

*Gillette v. Anderson*, 4 Ill. App. 3d 838 (2d Dist. 1972)...................................................9

*Junhao Su v. Eastern Illinois University*, 565 F. App'x 520 (7th Cir. 2014) ................14

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011)............................................4

*Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (2002)...........................11, 12

*Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010) ....................................................12

*Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977).........................................11

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010).....................................2, 3, 4, 6

*Terry v. DuPage Housing Authority*, 2024 WL 4679094 (N.D. Ill. Nov. 5, 2024) ........5

*Walton v. First Merchants Bank*, 772 F. App'x 349 (7th Cir. 2019)...............................4

**STATUTES**

815 ILCS 505/1(f)............................................................................................................10

815 ILCS 505/2.................................................................................................................11

42 U.S.C. § 3617 ................................................................................................................6

**OTHER AUTHORITIES**

Chicago Municipal Code 5-12-020...................................................................................13

Complaint, *Anthony v. O'Fallon Township High School District 203 Board of Education*, 712 F. Supp. 3d 1109 (S.D. Ill. 2024) (No. 3:23-cv-00967-SPM).......................15

Complaint, *Junhao Su v. Eastern Illinois University*, 565 F. App'x 520 (7th Cir. 2014) (No. 2:12-cv-02248-DGB) ..............................................................................14

Complaint, *Huon v. Johnson & Bell, Ltd.*, 2012 WL 1932120 (N.D. Ill. May 23, 2012) (No. 09 CV 7877) ................................................................................................10

## INTRODUCTION

As Defendants the University of Chicago and Michael Hayes (collectively, the "University") explained in their Memorandum in Support of the Motion to Dismiss (the "Motion to Dismiss"), Plaintiff Manuel Rivera fails to state any claim against the University for the second time in this litigation. Plaintiff's response to the Motion to Dismiss only confirms this conclusion.

*First*, Plaintiff devotes much of his brief to arguments that are not responsive to the motion and therefore do not assist the court in resolving the issues before it. Plaintiff's brief largely relies on the false premise that the University asks this Court to apply a heightened pleading standard. In reality, the University's motion relies on the well-established pleading standard under Supreme Court precedent—a standard that cannot be satisfied by simply parroting the elements of claims.[1] Plaintiff's arguments about the general role of "extrinsic evidence" on a motion to dismiss and the "preclusive effect" of his arrest are likewise not responsive to the University's motion. Plaintiff does not dispute that his arrest for felony aggravated battery of a peace officer is a judicially noticeable fact on a Rule 12 motion (or recognize that the complaint itself states that Plaintiff was "arrested"). And Plaintiff misunderstands the role that the arrest plays in this analysis; it is relevant not because of any "preclusive effect," but rather because it underscores that Plaintiff's claims lack the requisite "plausibility" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Second*, Plaintiff does not address many of the independent grounds for dismissal raised in the motion to dismiss. He does not address the breach of contract claim at all, nor does he address

---

[1] The only claim for which Plaintiff must satisfy additional pleading requirements is the breach of contract claim under Illinois law, *see* Mot. To Dismiss at 21—a claim for which Plaintiff has not opposed dismissal and is therefore waived. *See infra* at 12.

any of the University's unique arguments for dismissal of the Section 1981 claim. And for the Fair Housing Act discrimination and retaliation claims and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim, Plaintiff ignores at least one independent ground for dismissal asserted in the Motion to Dismiss. These arguments are therefore waived. *See, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (collecting cases).

*Third*, where Plaintiff does respond to the University's arguments, his responses often depend on misinterpretations of the law. For example, to argue that the Chicago Landlord and Tenant Ordinance exemption for dormitories does not apply to his claim, he quotes a statutory carveout that does not in fact appear in the cited provision. *See* Resp. Br. at 20. More broadly, Plaintiff's own cited cases make clear that Plaintiff asks this Court to significantly depart from existing authority on every cause of action he asserts against the University.

In short, Plaintiff must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Plaintiff's story does not. Plaintiff's theory, at bottom, asks the Court to accept that the University of Chicago singled him out, from a "crowd" of pro-Palestine protestors, to remove him from student housing and eventually suspend him after a monthslong student disciplinary process, for the reasons that he joined the protest and is of Lebanese Arab descent, *see* Am. Compl. ¶¶ 2, 5. This is not plausible, particularly given that his conduct also led to his arrest for felony aggravated battery of a peace officer, *see id.* ¶ 10; Mot. To Dismiss at 1 n.1. Ultimately, a straightforward application of black-letter law to Plaintiff's threadbare and conclusory allegations yields the conclusion that Plaintiff fails to state a claim. This Court should dismiss his Amended Complaint with prejudice.

## ARGUMENT

## I. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR HOUSING ACT FOR UNLAWFUL DISCRIMINATION.

Plaintiff's response mischaracterizes the University's motion to dismiss Count I as seeking to impose a heightened pleading standard. That is not the University's argument. The University's argument is that Plaintiff has failed to allege any facts that make an inference of discriminatory intent *plausible*, *see* Mot. To Dismiss at 5–9, which is fatal under the case law, as Plaintiff's own cited authorities make clear, *see* Resp. Br. at 10 (citing cases that all apply this standard).[2]

Specifically, Plaintiff's Amended Complaint alleges no facts to support his conclusory assertion that the University removed him from campus housing "because" of his race or national origin. Am. Compl. ¶¶ 41, 42.[3] Contrary to Plaintiff's extraordinary assertion, *see* Resp. Br. at 10, a plaintiff cannot simply say that a decisionmaker acted on the basis of these protected characteristics and survive a motion to dismiss. Such an "abstract recitation[] of the elements of a cause of action or conclusory legal statement do[es] nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law." *Swanson*, 614 F.3d at 405 (internal quotation marks and citation omitted). Plaintiff's cherrypicked quotations from a smattering of cases do not alter this fundamental principle: a complaint must contain *factual allegations* "sufficient to plausibly suggest" the defendant's discriminatory intent. *Iqbal*, 556 U.S. at 683. None of Plaintiff's allegations "plausibly" suggest discriminatory intent—

---

[2] Plaintiff's response to the University's motion to dismiss clarifies that Plaintiff is pleading only a disparate treatment claim under the FHA, not a disparate impact claim. That means Plaintiff's FHA discrimination claim requires discriminatory intent.

[3] Participation in a protest on behalf of a cause that is affiliated with a particular national origin does not constitute discrimination based on national origin. *See* Mot. To Dismiss at 5 n.3. Plaintiff does not dispute this in his response.

*i.e.*, "'a subjective desire or wish for discriminatory results to occur.'" *Farhan v. 2715 NMA LLC*, 723 F. Supp. 3d 662, 669 (N.D. Ill. 2024) (quoting *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 299 (7th Cir. 1991)), *appeal docketed*, No. 24-1532 (7th Cir. Apr. 4, 2024).

Take *Swanson v. Citibank*, the only precedential FHA discrimination decision Plaintiff cites. In that case—unlike this one—the (pro se) plaintiff alleged facts to support a plausible inference of discriminatory intent.[4] These facts included statements to the plaintiff about race by a defendant's employee, defendants' knowledge of the plaintiff's race, and the valuation of the plaintiff's home by a third-party appraiser for a significantly higher amount than the defendant's valuation. *Swanson*, 614 F.3d at 402–03, 406. Recognizing those alleged facts (among others), and expressly applying *Iqbal*'s "plausibility standard," the Seventh Circuit concluded that the Plaintiff's allegations sufficed to state a claim under the FHA. Plaintiff's reading of *Swanson* as holding that "all a plaintiff in a race discrimination case need do to survive a Rule 12(b)(6) motion is identify the type of discrimination, the defendants, and the date it occurred" is inconsistent with the case itself and how the Seventh Circuit has understood it in multiple subsequent cases. *Compare* Resp. Br. at 10, *with Walton v. First Merchants Bank*, 772 F. App'x 349, 350–51 (7th Cir. 2019) (citing *Swanson* and explaining that Walton's complaint "fell short" because she "alleged no facts suggesting discrimination … [t]he only allusions to race are her two statements that white customers were not mistreated. But no factual content supports this allegation … Her bare statements that the alleged … failures were 'clear' discrimination are insufficient."); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (noting *Swanson*'s requirement

---

[4] Plaintiff repeatedly relies on cases, like *Swanson*, litigated by pro se plaintiffs, without acknowledging that pro se complaints are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). But even those cases address complaints whose allegations are meaningfully more plausible and robust than the allegations here.

that the plaintiff "must give enough details … to present a story that holds together" as well as the specific factual allegations that supported discriminatory intent in Swanson's complaint).[5]

Plaintiff's efforts to distinguish the cases cited by the University fare no better. *See* Resp. Br. at 10–11. Just as in *Farhan*, the Amended Complaint here does not allege that the University "knew of plaintiff's" race "at the time" the University removed Plaintiff from student housing. *Farhan*, 723 F. Supp. 3d at 668 (bracket omitted). And just as in *Farhan*, the Amended Complaint pleads facts that negate an inference of discriminatory intent. For example, the Amended Complaint states: "university deans instructed Plaintiff that he was required to vacate his dormitory immediately *as he was being placed on involuntary leave due to his participation in the protest of October 11, 2024*." Am. Compl. ¶ 17 (emphasis added). "Put another []way, according to the complaint, [the University] would have demanded that plaintiff [leave campus] regardless of plaintiff's [race or] national origin." *Farhan*, 723 F. Supp. 3d at 668.

That the Amended Complaint is devoid of any factual content to support an inference of discriminatory intent is sufficient to end this inquiry. However, the fact of Plaintiff's arrest for felony aggravated battery, for which it is appropriate to take judicial notice, *see supra* at 1; *see also* Mot. To Dismiss at 1 n.1, confirms that Plaintiff cannot plead a claim for discrimination under the Fair Housing Act. *See also* Am. Compl. ¶ 10 (alleging that Plaintiff was "arrested" at the

---

[5] Plaintiff all but ignores other authorities offered by the University, such as *Terry v. DuPage Housing Authority*, 2024 WL 4679094 (N.D. Ill. Nov. 5, 2024). Plaintiff's observation that the court in *Terry* dismissed some claims based on the statute of limitations does nothing to address the court's express determination that the plaintiff's allegations were insufficient to state a claim for discrimination under the FHA. *Id*. at *3. Similarly, in *Access Living of Metro. Chicago v. Prewitt*, another case misconstrued by Plaintiff, a single conclusory allegation did not make the claim "sufficiently pleaded." *Contra* Resp. Br. at 11. Rather, there, the complaint included a whole host of facts—including, as particularly relevant here, an allegation (and admission by the defendant) that the defendant knew of the plaintiff's disability—that supported a plausible inference of discrimination. *Access Living of Metro. Chicago v. Prewitt*, 111 F. Supp. 3d 890, 897 (N.D. Ill. 2015).

protest).  The theory that the University's motivation for instructing Plaintiff to vacate campus housing was his race or national origin rather than the conduct for which he was arrested is simply not "a story that holds together."  *Swanson*, 614 F.3d at 404.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR HOUSING ACT FOR RETALIATION.

Plaintiff's retaliation claim asserts the theory that Plaintiff was subjected to retaliation for attempting to appeal his removal from student housing.  Am. Compl. ¶¶ 48–49.  The University moved to dismiss on three independent grounds:  that Plaintiff failed to allege (1) protected activity under the statute, (2) an adverse action under the statute, and (3) causation.  Plaintiff fails to engage with the latter two grounds for dismissal.  For those reasons alone, this Court should dismiss Plaintiff's retaliation claim.  *See* Mot. To Dismiss at 10-12; *supra* at 2.

Plaintiff's response to the University's first argument fails as well.  On this point, the University explained that the alleged protected activity—"attempt[ing] to appeal his eviction … through the Defendants' standard disciplinary appeal process for students," Am. Compl. ¶ 29—is not among the protected activities referenced in the statute, Mot. To Dismiss at 11.  Specifically, the statute prohibits retaliation for the "exercise or enjoyment of[] any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.  Attempting to appeal a removal from student housing is completely untethered from the rights protected under any of those subsections.  *See* Mot. To Dismiss at 11.  Plaintiff does not engage with this point at all.  Instead, Plaintiff's response—that a violation of Section 3604 is not a prerequisite to stating a retaliation claim—is a nonsequitur.  Resp. Br. at 12–13.[6]

---

[6] Plaintiff's contention that the Seventh Circuit's published decision in *Davis v. Fenton* is an "outlier" and should accordingly be disregarded, Resp. Br. at 12, misses the mark.  The principles *Davis* stands for—that the FHA "prohibit[s] retaliation against a person for exercising his or her rights under the Act" and that actions taken within the adversarial process such as "filing a

More broadly, Plaintiff attempts to obscure the reality that his legal theory cannot be reconciled with the statutory text or case law applying it. Plaintiff cites no case recognizing an FHA retaliation claim in any context remotely resembling this one—no case having to do with contesting removal from housing, much less in the university context. That is unsurprising given the statutory text and cases interpreting it. *See, e.g.*, *Davis v. Fenton*, 2016 WL 1529899, at *6 (N.D. Ill. Apr. 13, 2016) (explaining that § 3617 is typically concerned with "actions like refusing to sell a property or provide a mortgage on the basis of protected characteristics"), *aff'd*, 857 F.3d 961 (7th Cir. 2017); *Dudley v. Fenton*, 2016 WL 4158932, at *3 (N.D. Ill. Aug. 5, 2016) ("[M]ost § 3617 litigation addresses direct, extralegal acts such as cross-burning, firebombing, shootings, and physical assaults"). This Court should decline Plaintiff's invitation to disregard the statutory language and depart from the clear weight of judicial authority on this claim.[7]

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL EVICTION IN TORT.

Illinois state law does not recognize a cause of action for unlawful eviction in tort. *See* Mot. To Dismiss, at 12–14. Plaintiff's attempted arguments to the contrary are unavailing. As an initial matter, Plaintiff is incorrect that *Bozek* was cabined to the foreclosure context. *See* Resp. Br. at 13–14. Rather, the court there thoroughly searched the case law for a cause of action for

---

lawsuit[] … can't be considered retaliation" are instructive here. *Davis v. Fenton*, 857 F.3d 961, 963 (7th Cir. 2017).

[7] Moreover, it is noteworthy that the document Plaintiff references in the Amended Complaint, Am. Compl. ¶ 30, as purported support for the alleged refusal to consider his appeal states that Dean Hayes "carefully reviewed the involuntary leave determination and the information that formed the basis of that decision, and all of the materials you submitted for my consideration, as well as the information you provided during our November 8, 2024 meeting." Mot. To Dismiss Ex. A at 17-19. As the University explained in its Motion to Dismiss, this document was incorporated by reference in the Amended Complaint—and while the Court need not rely on it to grant the University's motion, it may properly consider the document at this stage. *See* Mot. To Dismiss at 3 n.2.

7

wrongful eviction generally—and failed to find one.  *See Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978, ¶¶ 93–96.[8]  *Bozek* postdates all of Plaintiff's cited case law and represents Illinois courts' definitive ruling on this issue.

Nor do the other cases upon which Plaintiff relies lend credence to his assertion that Illinois law recognizes this cause of action.  The *Bozek* court itself rejected Plaintiff's argument as to three of the cases he cites.  As the court explained in *Bozek*, the decision in *Cochrane v. Tuttle* described the claim at issue as an "action of trespass;" indeed, "[t]he phrase 'wrongful eviction' was never mentioned, much less as a cause of action with a discussion of its elements."  *See id.* (citing *Cochrane v. Tuttle*, 75 Ill. 361, 365 (1874)).  Similarly, in *Burnex Oil Co. v. Floyd*, "[t]he court never elaborated on [the] reference [to the wrongful eviction claim] … it is unclear whether that was [a Forcible Entry and Detainer Act] claim or a common-law eviction claim."  *Id.* ¶ 96 (citing *Burnex Oil Co. v. Floyd*, 4 Ill. App. 3d 627, 629 (1st Dist. 1971)).  Additionally, as the University explained in its Motion to Dismiss, Mot. To Dismiss at 13, the *Bozek* court reviewed the case law cited in *Miller* and found that it did not establish the existence of a cause of action for wrongful eviction in tort.  *Id.* (citing *Miller v. Washington*, 2013 WL 1340590 (N.D. Ill. Mar. 30, 2013)).  Another case that Plaintiff cites, *Cherry v. Five Bros. Mortgage Co. Services & Securing, Inc.*, itself relies on *Miller*, *Burnex*, and *Cochrane* for the proposition that the tort exists, rendering *Cherry* unhelpful authority on this point.  2019 WL 4014066, at *4 (N.D. Ill. Aug. 25, 2019).  And to the extent *Cherry* created any doubt about the state of Illinois law, the Illinois courts resolved the issue when *Bozek* was decided two years later.

---

[8] Plaintiff's citation to *Bozek* for the proposition that "an action for improper eviction may be brought under the Forcible Entry and Detainer Act" does Plaintiff no good because no such claim has been brought in this case.  Nor would such a claim assist Plaintiff in pursuing the damages he seeks: "FEDA provides a remedy for re-possession but *not* one for tort damages."  *See Bozek*, 2021 IL App. 191978, ¶ 91.

The other two cases that Plaintiff cites, *Gillette v. Anderson* and *Applegate v. Inland Real Estate Corp.*, are easily distinguished from the instant case because both dealt with constructive eviction. *See Gillette v. Anderson*, 4 Ill. App. 3d 838, 842 (2d Dist. 1972); *Applegate v. Inland Real Estate Corp.*, 109 Ill. App. 3d 986, 989–91 (2d Dist. 1982). Plaintiff's Amended Complaint does not allege constructive eviction; wrongful eviction is an entirely separate cause of action. Here, it is telling that Plaintiff cites *Applegate*—a case from over forty years ago about a different cause of action—as the sole authority for his assertion that "[w]rongful eviction in tort is now a routine claim in Illinois state courts." Resp. Br. at 14. Plaintiff's citations therefore cannot substantiate a claim for a nonexistent cause of action.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1981.

Plaintiff's three-sentence response to the University's arguments as to why his Section 1981 claim warrants dismissal is barely a response at all. Plaintiff declines to engage with the University's analysis of why his pleading is insufficient or the extensive case law the University cites. Plaintiff cannot "incorporate[] and restate[] [Fair Housing Act] arguments by reference" in response; these are distinct claims with distinct elements. *See* Resp. Br. at 15. For example, at the motion-to-dismiss stage, "[a]ny claim brought under § 1981[] … must initially identify an impaired contractual relationship[] … under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal quotation marks omitted). Plaintiff fails to address this independent ground for dismissal.

Rather than engage with any of the Section 1981 case law the University cited in support of its arguments, Plaintiff provides a single out-of-context quote from an unpublished district court case. In that case, *Huon v. Johnson & Bell, Ltd.*, the complaint included numerous facts to plausibly allege that the plaintiff was discriminated against because of his race, including that his job duties were assumed by white employees and other underrepresented attorneys were also

9

subjected to different, and worse, treatment. *See* Compl., *Huon v. Johnson & Bell, Ltd*., 2012 WL

1932120 (N.D. Ill. May 23, 2012) (No. 09 CV 7877). *Huan* does not stand for the proposition that

all a plaintiff needs to do is state the conclusion that he was discriminated against because of race—

nor does any Section 1981 precedent. *Contra* Resp. Br. at 15.

## V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT.

As the University explained in its Motion to Dismiss, Plaintiff fails to state a claim under

the ICFA because he fails to plead: (1) an "act done in trade or commerce"; (2) an "unfair act"

within the meaning of the statute; and (3) that Plaintiff was acting as a "consumer" in the context

of his allegations. Mot. To Dismiss at 17–19. Plaintiff's response, in essence, is that Plaintiff's

removal from housing was unfair, and students and tenants have been considered consumers in

some cases.

*First*, Plaintiff's response offers no coherent theory under which he has pled an act done in

trade or commerce. The ICFA expressly defines "trade" and "commerce" as "the advertising,

offering for sale, sale, or distribution of any services and any property, tangible or intangible, real,

personal, mixed, and any other article, commodity, or thing of value wherever situated." 815 ILCS

505/1(f); *see also G&G Closed Circuit Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1133 (N.D.

Ill. 2018) ("ICFA does not prohibit *any* deceptive acts or unfair practices that are in some nebulous

way connected to trade or commerce"). As the University's Motion to Dismiss explained, removal

from student housing is not within this definition. Mot. To Dismiss at 24. For example, in *Falk

v. Perez*, this Court held that eviction was not an act in commerce. *See Falk v. Perez*, 973 F. Supp.

2d 850, 868 (N.D. Ill. 2013) (defendant's eviction of plaintiff "was not 'advertising,' 'offering for

sale,' 'sale,' or 'distribution,' and thus does not qualify as trade or commerce under" ICFA); *contra*

Resp. Br. at 15–17. Cases such as *Falk* reinforce the common-sense conclusion that removal from

student housing is not an act "in the conduct of any trade or commerce" as the statute requires. 815 ILCS 505/2. This conclusion alone is fatal to Plaintiff's ICFA claim.

The cases Plaintiff cites do not cure this fundamental pleading deficiency. *See* Resp. Br. at 15–20. In those cases, students or tenants acted as consumers within the context of an act in trade or commerce. The tenant cases involve misrepresentation by a landlord during the leasing process. *See Duncavage v. Allen*, 147 Ill. App. 3d 88, 92-93 (1st Dist. 1986); *Carter v. Mueller*, 120 Ill. App. 3d 314, 323 (1st Dist. 1983). The student case is similarly focused on commercial transactions. *See, e.g.*, *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 159-60 (2d Dist. 1998) (addressing a defendant university's actions related to the sale of educational services). Here, there is no similar contemplation of a commercial transaction, like payment of rent or tuition. Removing a student from housing as part of placement on an involuntary leave is simply outside the statute's scope. *See Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 328 (1977) (holding that "[o]bviously," the plaintiff student was not a consumer for purposes of ICFA in a suit against a university).

*Second*, because Plaintiff points to no act that was done in trade or commerce, he cannot show that any act was "unfair" for purposes of the ICFA. The unfairness prong of an ICFA claim is not a free-floating inquiry into whether any situation, unconnected to a Plaintiff's role as a consumer, violates general conceptions of fairness. Rather, "[t]he ICFA protects consumers from 'unfair or deceptive acts or practices … *in the conduct of any trade or commerce.*'" *AIT Worldwide Logistics, Inc. v. Pacific Coast Container, Inc.*, 2024 WL 4041323, at *2 (N.D. Ill. Sept. 4, 2024) (emphasis added) (quoting 815 ILCS 505/2). Plaintiff cites *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418 (2002) for the prongs of the unfairness test under ICFA. What Plaintiff omits is that this test was based on the "factors considered by the Federal Trade Commission in

11

measuring unfairness." *Id*. at 417. These origins inform what it means to be "unfair" in the specific context of an ICFA claim. The two ICFA cases Plaintiff cites in support of its unfairness argument reinforce this required nexus between the alleged "unfair" conduct and the plaintiff's role as a consumer. *Robinson* concerned a motor vehicle lease agreement between a consumer and a dealer, and *Siegel v. Shell Oil Co*. concerned a consumer's complaint that oil companies engaged in action that resulted in higher gas prices. 612 F.3d 932, 933 (7th Cir. 2010). The alleged unfairness of removing Plaintiff from student housing is not tethered to Plaintiff's role as a consumer and therefore does not qualify under the statute.

*Third*, the fact that students and tenants *can* be consumers within the meaning of the ICFA does not show that Plaintiff was a consumer *with respect to his allegations in the Amended Complaint.* As explained in the University's Motion to Dismiss (and not rebutted in Plaintiff's response), Plaintiff's allegations regarding his removal from student housing do not describe the activities of a consumer, and so the claim must be dismissed for this reason as well. *See* Mot. To Dismiss at 19.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

The University moved to dismiss Plaintiff's breach of contract claim on multiple grounds. *See* Mot. To Dismiss at 20–21. Plaintiff's brief omits any reference to the breach of contract claim at all. Accordingly, he waives this claim. *See, e.g.*, *Alioto*, 652 F.3d at 721 (collecting cases)).

## VII. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CHICAGO LANDLORD AND TENANT ORDINANCE.

The section of the Chicago Residential Landlord and Tenant Ordinance (the "Ordinance") under which Plaintiff brings suit does not apply to dormitories. *See* Mot. To Dismiss at 21–22. Plaintiff alleges that he was unlawfully removed from his "dormitory." Am. Compl. ¶ 86. Therefore, Plaintiff fails to state a claim under the Ordinance.

Plaintiff's response is meritless. Section 5-12-020 of the Ordinance, titled "Exclusions," creates a broad exception to the Ordinance's subsequent provisions, including Section 5-12-160 (the provision on which Plaintiff bases his claim). Specifically, Section 5-12-020 ("Exclusions") states that "Rental of the following dwelling units shall not be governed by this chapter, unless the rental agreement thereof is created to avoid the application of this chapter." Chicago Municipal Code 5-12-020. Subsections (a), (b), (c), (d), (e), and (f) each describe various types of dwelling units to which this broad exception applies. Subsection (c) is the one that lists dormitories and student housing. Subsections (a) and (b) each contain a carveout stating that "Section 5-12-160" does in fact apply to "such premises" or "such buildings" listed in that particular subsection. Subsections (c), (d), (e), and (f) do not contain this carveout.

Plaintiff's entire argument on this point rests on an inaccurate citation. Rather than cite the carveout as appearing in subsections (a) and (b), Plaintiff cites it as appearing in subsections (b) and (c). Resp. Br. at 20 (citing "Sec. 5-12-020(b), (c)"). Once that error is corrected, it is beyond dispute that Section 5-12-160—a provision later in the same "chapter" of the Ordinance—does not apply to dormitories under the chapter-wide exception set forth in Section 5-12-020(c). Because all of Plaintiff's arguments follow from an inaccurate premise, Resp. Br. at 20–23, they cannot disturb the straightforward conclusion that he fails to state a claim under Section 5-12-160.

## VIII.  PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VI.

Again, Plaintiff's response rests on a mischaracterization of the University's Motion as seeking to impose a heightened pleading standard. *See* Resp. Br. at 23–24. In reality, the University seeks to hold Plaintiff to his obligation to satisfy the applicable pleading requirements under *Twombly* and *Iqbal*. Indeed, much of the University's argument for dismissal of this claim follows straight from *Iqbal* itself, which also concerned allegations of discrimination on the basis of race or national origin that failed to state a claim. *See* 556 U.S. at 666. While Plaintiff disputes

13

that he must plead facts that plausibly suggest a defendant's discriminatory "state of mind" when bringing a claim for intentional discrimination, Resp. Br. at 23, that language is a direct quote from *Iqbal*. 556 U.S. at 683 ("[R]espondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8."). Ultimately, Plaintiff's position cannot be reconciled with *Iqbal*, and that dooms his Title VI discrimination claim.

In arguing against dismissal, Plaintiff offers two Title VI cases, *see* Resp. Br. at 23–24, neither of which provides him any assistance. First, Plaintiff mischaracterizes the Seventh Circuit's decision in *Junhao Su v. Eastern Illinois University*. 565 F. App'x 520, 521 (7th Cir. 2014). There, the district court initially determined that the Supreme Court's decision in *Gebser v. Lago Visa Independent School District*, a Title IX deliberate indifference case, "imposed additional pleading requirements on plaintiffs who bring claims under Title VI." *Id*. The Seventh Circuit reversed because *Gebser* did not alter the pleading standard, not because a plaintiff need not provide factual allegations to support a plausible inference of discriminatory intent. Unlike in *Su*, Plaintiff does not allege that the relevant decisionmakers even had knowledge of his race, nor does he allege anything like the voluminous set of facts in Su's complaint indicating that the university "intentionally employed discriminatory … standards." *Junhao Su v. E. Ill. Univ*., 565 F. App'x 520, 521 (7th Cir. 2014); Compl., *Junhao Su*, 565 F. App'x 520 (7th Cir. 2014) (No. 2:12-cv-02248-DGB).

Equally unhelpful to his cause is Plaintiff's other cited Title VI case—*Anthony v. O'Fallon Township High School District 203 Board of Education*, 712 F. Supp. 3d 1109 (S.D. Ill. 2024). There, the complaint stated that a school employee "made a disparaging remark to [the plaintiff] and other students" and school leadership "wholly failed to investigate the matter when it was

14

elevated." *Id*. at 1119. The complaint provided the specific race-based remark and the context in which it was said. Compl., *Anthony v. O'Fallon Twp. High Sch. Dist. 203 Bd. of Educ*., 712 F. Supp. 3d 1109 (S.D. Ill. 2024) (No. 3:23-cv-00967-SPM). These facts "produce[d] an inference of discriminatory intent." *O'Fallon Twp.*, 712 F. Supp. 3d at 1119. Plaintiff's Amended Complaint contains no facts to support such an inference here.

## IX.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

For all of the reasons discussed above and in the University's Motion to Dismiss, Plaintiff's claims should be dismissed with prejudice.[9] Plaintiff has already had a second bite at the apple, and yet he has still failed to state a claim. Allowing him a third try, where his "allegations do not suggest any plausible basis" for his theories, would only prolong a meritless suit. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 919 (7th Cir. 2015).

### <u>CONCLUSION</u>

For these reasons, the Court should dismiss Counts I, II, IV, V, VI, VII, VIII, and IX with prejudice.

Date: July 2, 2025

Respectfully submitted,

By:  /s/ *Kathryn L. Wynbrandt*

Kathryn L. Wynbrandt
Erica S. Turret (admitted *pro hac vice*)
Mary-Claire Spurgin (admitted *pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave. NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

---

[9] The parties agree that this Court should not convert the University's motion to dismiss into a motion for summary judgment. *See* Resp. Br. at 6-7 n.3. The materials that the University attached to its Motion to Dismiss can properly be considered on a Rule 12(b)(6) motion. *See* Mot. To Dismiss at 1 n.1, 3 n.2, 7 n.4 (collecting authority). Even if this Court were to disregard those materials, however, none of Plaintiff's claims survive a motion to dismiss for all the reasons described above and in the University's Motion to Dismiss.

KWynbrandt@jenner.com
ETurret@jenner.com
MSpurgin@jenner.com

16

### <u>CERTIFICATE OF SERVICE</u>

I certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

<u>/s/ *Kathryn L. Wynbrandt*</u>